UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------

IN RE:                              )
                                    )
HARRY ELDON WOOD, JR.,              )      CASE NO. 07-21810 (ASD)
                                    )
           DEBTOR                   )      CHAPTER 7
------------------------------------------------------
                                    )
                                    )
SYNCOM INDUSTRIES, INC.,            )
                                    )
           PLAINTIFF                )      ADV. PRO. NO. 08-02021
V.                                  )
                                    )
HARRY ELDON WOOD, JR.,              )
                                    )
           DEFENDANT                )
------------------------------------------------------

APPEARANCES:

Lee N. Johnson, Esq.                       Attorneys for Plaintiff
350 Silas Deane Highway
Wethersfield, CT 06109

William S. Gannon, Esq.
William S. Gannon, PLLC
889 Elm Street, 4th Floor
Manchester, NH 03101

Gary J. Greene, Esq.                       Attorney for Defendant
Greene Law PC
11 Talcott Notch Road
Farmington, CT 06032


**MEMORANDUM OF DECISION ON COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I.    INTRODUCTION

In the captioned adversary proceeding, the Plaintiff, Syncom Industries, Inc. (hereinafter, "Syncom"), requests the Court to find its claim against the Debtor, Harry Eldon Wood, Jr. (hereinafter, "Wood" or the "Debtor") nondischargeable under Bankruptcy Code §523(a)(2) (false representations/fraud), (4) (defalcation of a fiduciary), and (6) (willful and malicious injury).[1]  In support of its request Syncom relies on the alleged preclusive effect of a prior New Hampshire state court judgment it obtained against Wood for breach of contract, breach of fiduciary duty, and loss of business reputation and goodwill, as well as evidence presented at a hearing before this Court.  For the reasons discussed hereinafter, the Court finds that Syncom's claim is subject to the Debtor's discharge in this bankruptcy case.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

---

[1] The Complaint contains three claims for relief labeled "Claim for Relief I, II, and III", respectively, hereinafter referred to as "Counts One, Two and Three". Count One fails to specify whether a determination of nondischargeability is sought under §523(a)(2)(A) or (B), or both.  Nonetheless, the language of the Count One implicates §523(a)(2)(A), and the Court will treat it as such.

2

### III.   BACKGROUND

The Court assumes familiarity with the relevant factual background between Syncom and Wood that is thoroughly discussed in the pre-petition proceedings before the New Hampshire Superior Court (hereinafter, the "Superior Court") in *Syncom Industries, Inc. d/b/a Syncom Industries v. Eldon Wood, Fabio Flores, and William Hogan*, Docket No. 02-E-188, Rockingham County Superior Court for the State of New Hampshire (hereinafter, the "Superior Court Decision"), and the New Hampshire Supreme Court (hereinafter, the "Supreme Court") in *Syncom Industries, Inc. v. Wood*, 155 N.H. 73, 920 A.2d 1178 (2007) (hereinafter, the "Supreme Court Decision").

Syncom operates a movie theater cleaning business.  Matthew Sinopoli (hereinafter, "Sinopoli"), the owner and chief executive officer of Syncom, hired the Debtor in 2001 as Vice President of Sales.  The Debtor, who at that time was a district manager for Regal Cinemas, had been employed since 1983 in various positions that included management of both individual theaters and regional operations of several large theater chains. The Debtor and Sinopoli entered into an employment agreement on June 13, 2001 (hereinafter, the "Employment Agreement"), the terms of which included the following non-compete clause (hereinafter, the "Non-Compete Clause" or "Restrictive Covenant"):

> The Manager [Wood] further agrees that for a period of three (3) years (36 months) after termination of his employment, whether with or without cause, the Manager will not directly or indirectly solicit business from any of the Company's customers located in any territory serviced by the Company while he was in the employment of the Company. The Manager also agrees that during such period the Manager will not become interested in or associated, directly or indirectly, as principal, agent or employee, with any person, firm or corporation which may solicit business from such customers. Manager shall not disclose the private affairs of the Company or any secrets or confidential information of the Company which he may learn while in the

3

Company's employ.

Employment Agreement, Exh.E at ¶3(C).

The Employment Agreement further provided for the Debtor to receive a weekly salary of $1,000 plus a "commission once sales level is exceeded per discussion with [Sinopoli]." Exh. E at 1.  By December, 2001, there was still no agreement as to when commissions would become payable and, following Syncom's refusal to discuss commissions, the Debtor began making plans to leave Syncom and form a similar company of his own.  In early January, 2002, Syncom demoted the Debtor and suspended him for a week without pay.  Shortly thereafter, on January 14, 2002, the Debtor resigned from Syncom.  Two days later, the Debtor, with a $30,000 loan from his father to cover his initial operating expenses, formed his own company, Big E Theatre Cleaning, LLC (hereinafter, "Big E"), a Connecticut limited liability company.  Fabio Flores, another employee of Syncom, also resigned in January, 2002 and was hired by Big E.  A third employee of Syncom, William Hogan (hereinafter, "Hogan"), was terminated by Syncom in February, 2002.  In May, 2003, Hogan was also hired by Big E.

Syncom's attorney sent the Debtor a letter shortly after his resignation, reminding him of the Non-Compete Clause.  However, the Debtor testified that, in light of Syncom's refusal to negotiate a commission arrangement, and his  suspension, he believed, on the advice of his attorney, that the Non-Compete Clause was not enforceable.  The four Regal theaters whose business the Debtor had obtained for Syncom quickly transferred their business to Big E.  Shortly thereafter, the Debtor obtained as a client AMC Empire 25, a large multiplex theater in New York, as well as several other theaters which also had not been customers of Syncom.

4

Syncom, in May, 2002, filed a complaint in the Superior Court against Hogan, Flores[2], and the Debtor, alleging breach of the Restrictive Covenant of their employment agreements (hereinafter, the "State Court Action").   During the trial of the State Court Action, the complaint was amended to add a second count alleging that the defendants breached their fiduciary duties to Syncom.   "[D]etermin[ing] that the plaintiff's claims for breach of contract, breach of fiduciary duty, and loss of business reputation and good will should all be considered together," Superior Court Decision, Exh. A at 12, the Superior Court ruled in favor of Syncom on both counts, but discussed only the breach of contract issues;   finding that the defendants had breached the Non-Compete Clauses of their Employment Agreements, the Superior Court held Wood and Hogan liable to Syncom for compensatory damages in the amount of $1,145,700, enhanced compensatory damages in the amount of $250,000, and attorney's fees in the amount of $100,000.

Wood and Syncom both appealed the Superior Court Decision to the New Hampshire Supreme Court.  On March 16, 2007, the Supreme Court issued the Supreme Court Decision, in which it held:

(1)    "As a matter of law, the two restrictive covenants at issue are unenforceable because they are unreasonably broad in their scope. Thus, we hold that the trial court erred by ruling to the contrary. Accordingly, we reverse that ruling." *Id.* at 81.

(2)    Although noting that the trial court had the power to reform an overly broad restrictive covenant to limit its geographical and/or temporal scope if the Plaintiff shows that it acted in good faith, the Supreme Court "express[ed] no opinion on whether the covenants should be reformed . . . . as resolution of that issue will require factual determinations, it is for the trial court to consider on remand." *Id.*

---

[2]  The Superior Court entered a default judgment against Flores who did not appear in the state Court Action.

(3)     "[B]ecause a proper calculation of damages will depend upon the scope [and enforceability] of the restrictive covenants, we vacate the award of compensatory damages and remand for such further proceedings as the trial court deems necessary."  *Id.* at 88.

(4)     "We vacate the award of attorney's fees for further consideration after the trial court has ruled upon the other remanded issues."  *Id.* at 88 - 89.

*Syncom Industries, Inc. v. Wood*, *supra* 155 N.H. at 73, 920 A.2d at 1178.

Before the Superior Court held a hearing on remand, Wood, on December 20, 2007, commenced the instant bankruptcy case by filing a petition under Chapter 7 of the Bankruptcy Code, thereby staying the New Hampshire state court proceedings pursuant to the automatic stay of §362(a).  Syncom, on March 25, 2008, commenced the captioned adversary proceeding against Wood by filing a complaint (hereinafter, the "Complaint"), ECF No. 1, claiming that the Superior Court judgment award against Wood, to the extent redetermined upon remand, is nondischargeable pursuant to Bankruptcy Code section 523(a)(2), (a)(4), and (a)(6).  The Debtor received a discharge on December 22, 2008.

The Court, on July 27, 2009, held a hearing (hereinafter, the "Hearing") at which the parties presented documentary evidence and the testimony of Sinopoli and the Debtor. Subsequently, the parties filed memoranda of law in support of their respective positions and the Court took the matter under consideration.

# IV.  DISCUSSION

## A.  Collateral Estoppel

Syncom argues that the doctrine of collateral estoppel[3], as applied to the New Hampshire state court proceedings, conclusively establishes all of the facts necessary to a determination by this Court that its claim against the Debtor is nondischargeable, thereby barring the Debtor from relitigating those issues in the instant adversary proceeding.

Collateral estoppel, or issue preclusion, is that doctrine which holds that "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."  *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008).   "The United States Supreme Court has confirmed that the doctrine of collateral estoppel is available to litigants in bankruptcy matters, and specifically in the context of dischargeability proceedings under 11 U.S.C. § 523(a)."  *In re Bugnacki*, 439 B.R. 12, 23 (Bankr. D.Conn. 2010)(citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991)).   "The party seeking to utilize the doctrine of collateral estoppel has the ultimate burden of proving the elements necessary for its

---

[3]Syncom's discussion of the broader concept of *res judicata*, or claim preclusion, which precludes a party from raising a claim that could have been brought in the prior proceeding, is inapposite here since a cause of action for nondischargeability of the judgment debt did not arise prior to the commencement of the Debtor's bankruptcy case. *See, e.g. In re Tracey*, 250 B.R. 468, 471 (Bankr. D.N.H. 2000). The doctrine of res judicata, or claim preclusion, bars the subsequent litigation of issues that were actually decided in a prior proceeding, as well as those that could have been raised in the prior proceeding, between the same parties on the same cause of action. *South Willow Properties, LLC v. Burlington Coat Factory of N.H., LLC*, 159 N.H. 494, 498 (2009)(citation omitted). However, "res judicata cannot form the basis for a decision of non-dischargeability . . ." *In re Sparrow*, 306 B.R. 812, 827 (Bankr. E.D.Va. 2003)(citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205 (1979)(superceded by statute). While *Brown v. Felsen* was superceded on other grounds by the enactment of the Bankruptcy Code, and amendments thereafter, this case remains good law for the point that res judicata is generally inapplicable to dischargeability proceedings in bankruptcy. *See* 18 *Moore's Federal Practice* § 131.23[5][d] (Matthew Bender 3d ed.)); *see also In re Cohen*, 370 B.R. 26, 29 (Bankr. D.N.H. 2007)("Res judicata is not appropriate in exception to discharge cases . . .").

application." *In re Conway*, 418 B.R. 772, 776 (Bankr. D.Conn. 2009)(citing, e.g., *In re Swirsky*, 372 B.R. 551, 562 (Bankr.D.Conn. 2006)); *see also, Appeal of Stanton*, 147 N.H. 724, 730, 805 A.2d 419 (2002).

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, determinations regarding the preclusive effect of state court judgments are made using the law of the state in which the judgment was rendered." *In re Swirsky*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006); *see also In re Eurocrafters, Ltd.*, 183 Fed.Appx. 70, 71 (2d Cir. 2006) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, (1985)). Because Syncom relies on the Superior Court and Supreme Court Decisions, New Hampshire law governs the applicability of collateral estoppel to the instant adversary proceeding.

> [T]he doctrine of collateral estoppel. . . . bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action. *Petition of Kalar*, 162 N.H. 314, 320, 27 A.3d 756 (2011). Under certain circumstances, collateral estoppel may preclude the relitigation of findings made by a previous court when: (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment. *Id.*

*Hansa Consult of North America, LLC v. Hansaconsult Ingenieurgesellschaft mbH*, 163 N.H. 46, 50, 35 A.3d 587, 591 - 592 (N.H. 2011). The third and fourth criteria are not presently at issue; the parties to the present proceeding were parties to the state court proceedings and had a full and fair opportunity to litigate the issues presented therein. Accordingly, the Court will consider, as to each Count of the present Complaint, whether the Superior Court and Supreme Court Decisions satisfy the remaining criteria and thereby

8

establish, under the doctrine of collateral estoppel, the elements necessary to except

Syncom's claim from the Debtor's discharge.  Where the Court concludes that collateral

estoppel is not applicable to a particular Count, it will then consider whether the evidence

provided to this Court at the Hearing, is nevertheless sufficient to satisfy Syncom's burden

of proof.

## B.   Nondischargeability

The subsections of Bankruptcy Code §523(a) relevant to the present proceeding

provide:

> (a) A discharge under section 727 . . . of this title does not discharge an
> individual debtor from any debt—
> . . .
>
> (2)   for money, property, services, or an extension, renewal, or refinancing
>       of credit, to the extent obtained by—
>
>       (A)   false pretenses, a false representation, or actual fraud, other
>             than a statement respecting the debtor's or an insider's
>             financial condition;
> . . .
>
> (4)   for fraud or defalcation while acting in a fiduciary capacity,
>       embezzlement, or larceny; [or]
> . . .
>
> (6)   for willful and malicious injury by the debtor to another entity or to the
>       property of another entity. . . .

11 U.S.C.A. § 523(a).

The burden of proof in a nondischargeability proceeding is on the creditor seeking

an exception to discharge to prove, by a preponderance of the evidence, that its claim

satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy

Code §523(a).  *Grogan  v. Garner* , 498 U.S. 279, 286, 111 S. Ct. 654 (1991).  Further,

9

"exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio* (*In re Bonnanzio*), 91 F.3d 296, 300 (2d Cir.1996) (citations and quotation marks omitted).

Syncom, contending that, under the doctrine of collateral estoppel, matters determined by the Superior Court and Supreme Court decisions are sufficient to meet its burden of proof that its claim against the Debtor is nondischargeable, entered into evidence the following two state-court documents:

- *Syncom Industries, Inc. d/b/a Syncom Industries v. Eldon Wood, Fabio Flores, and William Hogan*, Docket No. 02-E-188, Rockingham County Superior Court for the State of New Hampshire, Final Order, dated December 13, 2004 (the "Trial Court Decision"), Exh. A ; and

- *Syncom Industries, Inc. v. Wood*, 155 N.H. 73, 920 A.2d 1178 (2007) (the "Supreme Court Decision"), Exh.B.

## C.    Count One – §523(a)(2)(A)

In Count One of the Complaint Syncom alleges that the judgment debt established by the New Hampshire proceedings is nondischargeable under Bankruptcy Code Section 523(a)(2) as "a debt for money, property, services or an extension, renewal or refinancing of credit obtained by false pretenses, false representation and/or actual fraud." *Complaint*, ¶14.

Under well-established §523(a)(2)(A) principles, the plaintiff bears the burden of proof on each of the following five elements:

(1)    the debtor made the representations;

(2)    at the time he knew they were false;

10

(3)     he made them with the intention and purpose of deceiving the creditor;

(4)     the creditor relied on such representations; and

(5)     the creditor sustained the alleged loss and damage as the proximate
result of the representation having been made. . . .

*In re Shallow*, 393 B.R. 277, 286 (Bankr. D. Conn. 2008) (quoting *AT&T Universal Card*

*Services Corp. v. Williams (In re Williams)*, 214 B.R. 433, 435 (Bankr.D.Conn.1997)).    "To

be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere

negligence, poor business judgment or fraud implied in law . . . is insufficient."   *In re*

*Williams*, 214 B.R. at 435 (citation omitted).

Neither the Superior Court Decision (discussing only breach of contract issues) nor

the Supreme Court Decision found that the Debtor made any false representations with

intent to deceive Syncom; nor did those decisions include determinations that Syncom

relied upon any such misrepresentation; nor that Syncom's claim was proximately caused

by any such misrepresentation.   The doctrine of collateral estoppel is thus unavailing as

to the elements of §523(a)(2)(A).

Nor did Syncom satisfy its burden of proof as to nondischargeability under

§523(a)(2)(A) through evidence at the Hearing. The only false statement alleged in the

Complaint is that "the Debtor and others told customers that they were the 'Syncom team'".

*Complaint*, ¶15.[4]   Even if this Court were to assume, *arguendo*, that the Debtor did in fact

---

[4]Paragraph 15 of Count One reads in its entirety "[t]he Plaintiff *alleged and proved that the Debtor owed fiduciary duties to the Plaintiff and breached those duties by, among other things*, promoting his interests at the expense of the Plaintiff, failing to be absolutely loyal to the Plaintiff and using confidential and proprietary information belonging to the Plaintiff to misappropriate and take customers from the Plaintiff and that the Debtor and others told customers that they were the "Syncom team"" (emphasis added). Paragraph 16 of Count One reads in its entirety "[t]he conduct of the fiduciary Debtor constitutes fraud under New Hampshire and Connecticut law" (emphasis added). While the "fiduciary capacity" of the Debtor is only relevant to Count Two, these allegations were incorporated by reference into that Count. *See* Complaint, ¶19.

11

tell prospective customers that he was part of the Syncom team, Syncom did not establish a sufficient factual basis for this Court to conclude that Wood made such statements while he was no longer employed by Syncom, as opposed to while he did actually work for Syncom.  Syncom has thus failed to meet its burden of proving that the Debtor made a representation that was false at the time it was made.

Syncom has not satisfied its burden of establishing the requisite elements of nondischargeability pursuant to §523(a)(2)(A), by collateral estoppel, or through evidence presented at the Hearing.

**D.    Count Two – §523(a)(4)**

In Count Two Syncom seeks a determination of nondischargeability pursuant to §523(a)(4) as a "defalcation while acting in a fiduciary capacity" more specifically alleging that the Superior Court "found and determined that the Debtor . . . (a) had breached fiduciary duties owed to the Plaintiff, and (b) caused actual damage . . .". Complaint, ¶¶ 20 & 21.  Syncom argues that, under the doctrine of collateral estoppel, the Superior Court Decision is entitled to preclusive effect as to the elements of §523(a)(4).  As previously noted, the parties to the present proceeding were parties to the New Hampshire state-court proceedings wherein they had a full and fair opportunity to litigate the issues therein presented.

Although the Superior Court Decision discussed only Syncom's breach of the Restrictive Covenant claims, the Supreme Court Decision noted that the Trial Court had "ruled that Wood and Hogan breached both the restrictive covenants and their fiduciary duties to Syncom."  Exh. B at 4. The Supreme Court declined to consider "Wood's argument that the [Superior Court] incorrectly deemed him a fiduciary of Syncom" on

12

grounds that the issue had not been preserved for appeal because it was "not raised in the

trial court." *Id.* Accordingly, the Superior Court's finding that the Debtor was a fiduciary

under New Hampshire state law was not disturbed on appeal.

However, for the reasons set forth hereinafter, the Court finds that Syncom has not

met its burden of proof as to the remaining two requisites for collateral estoppel; Syncom

has not established (1) that the issues are identical, or (2) that resolution of the issue was

essential to the prior judgment.

The issue decided by the Superior Court, applying New Hampshire law, that Wood

was liable to Syncom for, *inter alia*, a breach of fiduciary duty, is not identical to the issue

of fiduciary capacity before this Court. "The fiduciary relationship necessary for a denial

of discharge under 11 U.S.C. § 523(a)(4) is determined by federal law. . . . [T]he broad

definition of fiduciary under nonbankruptcy law – a relationship involving trust, confidence,

and good faith – is inapplicable in the dischargeability context." *In re D'Abrosca*, BAP No.

RI 10-062, 2011 WL 4592338, *5 (B.A.P. 1st Cir. Aug. 10, 2011) (citations and internal

quotation marks omitted) (a New Hampshire state court finding that a debtor breached a

fiduciary duty was not entitled to collateral estoppel effect in a subsequent adversary

proceeding under §523(a)(4)).

> [T]here are federal limits on the ability of state law to expand the effects of this provision. *See, e.g., In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994) ("If ... a fiduciary is anyone whom a state calls a fiduciary ... states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary."). As a general matter, therefore, federal law sets the outer boundaries of the defalcation exception, while state law may, through lesser or greater regulation of fiduciary obligations, affect the application of the provision.

*The Andy Warhol Found. for Visual Arts, Inc. v. Hayes* (*In re Hayes*), 183 F.3d 162, 166

-167 (2d Cir. 1999).

The definition of a fiduciary relationship under New Hampshire state law is more

extensive than that recognized under federal bankruptcy law:

> Citing different cases, both parties basically agree on the definition of a
> fiduciary under New Hampshire law. "The term 'fiduciary or confidential
> relation' is a comprehensive one and exists wherever influence has been
> acquired and abused or confidence has been reposed and betrayed."
> *Cornwell v. Cornwell,* 116 N.H. 205, 209, 356 A.2d 683 (1976), cited in *Lash
> v. Cheshire County Sav. Bank,* 124 N.H. 435, 438, 474 A.2d 980 (1984),
> which was in turn cited in *Brzica v. Trustees of Dartmouth College,* 147 N.H.
> 443, 447–48, 791 A.2d 990 (2002).  In *Lash,* the court went on to say:
>
> > A fiduciary relation does not depend on some technical relation
> > created by or defined in law. It may exist under a variety of
> > circumstances and does exist in cases where there has been
> > a special confidence reposed in one who, in equity and good
> > conscience, is bound to act in good faith and with due regard
> > to the interests of the one reposing the confidence.
>
> *Lash,* 124 N.H. at 439, 474 A.2d 980 (citations omitted).

*In re Clarkeies Market, L.L.C.*, 322 B.R. 487, 494-495 (Bankr. D.N.H. 2005).

In the Second Circuit, "fiduciary capacity" under §523(a)(4) is generally limited to an

express or technical trust or "a difference in knowledge or power between fiduciary and

principal which . . . gives the former a position of ascendancy over the latter." *Hayes*, 183

F.3d at 167 (quoting *Marchiando*, 13 F.3d at 1116) (internal quotation marks omitted).

However, the Superior Court Decision states:

> Both the plaintiff and defendants Wood and Hogan filed detailed Requests
> for Findings of Fact and Rulings of Law which the Court has addressed.
> Because those requests reference most of the evidentiary issues which the
> Court heard over the course of the trial, it will not seek to re-discuss those
> issues herein.  Rather, the purpose of the within Order is to supplement
> those requests with additional findings which the Court deems relevant.

14

Exh. A at 3.

The Superior Court granted or denied the aforementioned "requests" by reference only to the statement number of each.  The Superior Court Decision does not articulate such findings nor does it indicate the basis for its conclusion that the Debtor breached a state-law fiduciary duty; nor has Syncom put into evidence before this Court any of the "requests" that might have shed some light thereon.  Because Syncom has not provided this Court with sufficient evidence to establish that the state-law breach of fiduciary duty found by the Superior Court falls within the narrower scope of §523(a)(4)'s fiduciary defalcation exception to discharge, Syncom has not met its burden of proof to establish that the issue resolved by the Superior Court is identical to the issue in the instant proceeding, as is required to avail oneself of the doctrine of collateral estoppel.

Moreover, Syncom has not shown that the Superior Court's finding of a fiduciary breach was essential to the judgment it rendered.  "The [Superiorl] Court determine[d] that the plaintiff's claims for breach of contract, breach of fiduciary duty, and loss of business reputation and good will should all be *considered together*," Exh. A at 12 (emphasis added).  And the Superior  Court computed its award of damages based upon the losses attributed to the defendants' breach of the Non-Compete Clauses without reference to their fiduciary duties.  *See, e.g. In re Tracey*, 250 B.R. 468, 472 (Bankr. D.N.H. 2000) ("The final judgment ultimately awarded the exact amount of the damages sought for the contract count and for sanctions for not appearing at the deposition. Clearly, a finding on the issue of a breach of fiduciary duty was not essential to the judgment. . . .").

Because the elements of the defalcation exception of §522(a)(4) have not been established in this proceeding under the doctrine of collateral estoppel, the Court looks to

15

whether Syncom has otherwise borne its burden of proof thereon through evidence presented at the Hearing.

"Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law." *In re Hayes*, 183 F.3d at 166 (2d Cir.1999).  The Debtor acknowledges that, as Vice President of Sales, he was employed as a corporate officer of Syncom.   Several courts, particularly those that require an express or technical trust under §523(a)(4), have held that a corporate officer's violation of a statutory or common law fiduciary duty of loyalty to his employer corporation does not give rise to a nondischargeable debt pursuant to §523(a)(4), *see, e.g., In re Sullivan*, 19 Fed.Appx. 180, 181 (6th Cir. 2001) (§523(a)(4) not applicable to debt for corporate officer's breach of common law fiduciary duty where corporation's property was not misappropriated); *In re Riddle*, 2011 WL 2461896, 3 - 4 (Bankr. N.D.Ga. 2011) ("The general fiduciary duties of a corporate officer do not establish the existence of a fiduciary capacity that is necessary to establish an exception to discharge for 'fraud or defalcation' under § 523(a)(4)."). However, others, including this Court, have found that it may.  *See, e.g., In re Morello*, 2012 WL 1945509 (Bankr. D. Conn. 2012), *In re Kalogeros*, 2007 WL 1795846 (Bankr. D.Conn. 2007).

> Accepting the proposition that a corporate officer or director may be deemed a "fiduciary" with respect to his stewardship of corporate property within the meaning of Section 523(a)(4), that alone is not sufficient to hold a debt non-dischargeable under subsection (4). The statute applies only to a debt incurred on account of conduct, a defalcation, perpetrated while the debtor was acting in the fiduciary capacity in question. As this Court explained in *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79, 87 (Bankr.S.D.N.Y.1998), aff'd, 226 B.R. 767 (S.D.N.Y.1998).

> The mere *existence* of a fiduciary relationship is not sufficient

16

> to deny dischargeability under Section 523(a)(4). The Court must also make a finding that the debtor-defendant was "acting *in a fiduciary capacity" with respect to the particular conduct* giving rise to the liability which is claimed to be non-dischargeable.

*In re Hyman*, 320 B.R. 493, 510 -511 (Bankr. S.D.N.Y. 2005) (emphasis expanded).

> But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?

*Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 85 - 86, 63 S.Ct. 454, 458 (1943), quoted in *Skilling v. United States*, 130 S.Ct. 2896, 2936 (2010) (Scalia, J., concurring).

The question, therefore, is whether Syncom has established that the Debtor violated his duty of loyalty as a corporate officer of Syncom under these standards. It is undisputed that, following his resignation from Syncom, the Debtor formed his own theater cleaning company, Big E LLC, and began competing with Syncom. Although the Superior Court found such conduct violated the Non-Compete Clause of the Employment Agreement, the Supreme Court subsequently held such provisions unenforceable. Moreover, even if the Superior Court, on remand, were to reform the Employment Agreement to limit the scope of the Non-Compete Clause, the Debtor's obligations thereunder would remain contractual in nature; an employer-employee relationship does not give rise to a fiduciary relationship cognizable under §523(a)(4). *See Rajala v. Allied Corp.*, 919 F.2d 610, 624 (10th Cir. 1990) ("[Plaintiff] can not imply fiduciary duties that were not clearly and convincingly assumed by [defendant] in order to cure its contractual deficiencies."). The common law duty of loyalty does not prohibit a former corporate officer from competing with his former

17

corporation following the cessation of such employment. *See, e.g., Brinkley & Co., Inc. v. Matteucci*, 1995 WL 382115, 3 (1st Cir. 1995) (A corporate officer's "fiduciary duty is not breached simply by secretly setting up a new firm during the fiduciary's tenure provided that in the course of such arrangements the fiduciary does not otherwise act in violation of his fiduciary duties. Rather, the corporate officer's duty is to refrain from actively competing with his employer *during the tenure of his employment*.") (emphasis added; citations and internal quotation marks omitted). The duty of loyalty does not extend beyond the termination of the employment relationship except in so far as it concerns the disclosure or use of confidential and proprietary information acquired during such relationship. *Id.*; *see, also*, Restatement (Third) Of Agency § 8.04 (2006) ("Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors. During that time, an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship.")

Syncom alleges that the Debtor, shortly before his resignation from Syncom, made plans and preparations to compete with Syncom following his employment: that the Debtor had approached his father for a loan to finance his start-up costs; that he had consulted an attorney about the enforceability of the Non-Compete Clause and about setting up a new limited liability company; and that he had told two of his co-workers, over a meal, that he intended to start his own company. The Court need not consider whether Syncom has satisfied its burden of proof as to such allegations because, even if true, none of those activities violate the common law duty of loyalty. *See, e.g.,* Restatement (Third) Of Agency

18

§ 8.04; *Brinkley & Co., Inc. v. Matteucci*, 1995 WL 382115, 3 (1st Cir. 1995)*; Connors v. Howe Elegant, LLC*, 47 Conn. L.Rptr. 107, 2009 WL 242324 (Conn. Super. 2009).

Finally, Syncom argues that the Debtor misused Syncom's trade secrets and confidential and proprietary information for the benefit of himself and Big E. Syncom did provide evidence that the Debtor may have used copies of its cleaning checklists, inspection checklists, etc. However, it is apparent from the evidence produced that such forms were not confidential. Each of Syncom's customers received, and countersigned, one or more copies thereof. Because a copy of the checklists could have been obtained from any such customer, the Debtor's access to them did not arise from his status as a corporate officer. As to the terms of Big E's contract with AMC Empire 25 being similar to the contracts used by Syncom, the Court credits the testimony of the Debtor that the contract at issue was provided to Big E by AMC Empire 25 itself.

Syncom provided no evidence that its customer lists contained any confidential or proprietary information or that the Debtor took from it or misused any such lists. On the contrary, the Debtor, prior to joining Syncom, had almost 20 years of experience in the movie theater business, including several as District Manager of the Regal Cinema chain and his already existing network of contacts within the industry was one of the reasons Syncom had sought to hire him.

As to Syncom's claim that the Debtor usurped its business model, the Debtor, like Syncom, subcontracted out the actual cleaning tasks and, with the theater managers, inspected the results. As the Superior Court noted, the movie theater cleaning business is "not brain surgery." Superior Court Decision, Exh. A at 3. Moreover, neither the subcontracting nor the inspections were confidential; the information was known to every

19

customer and was part of a standard sales pitch to potential customers.

As to the allegations that the Debtor and Big E utilized insider pricing information provided by Hogan, the Court finds that Syncom has not met its burden of proof.  Syncom provided a document with some handwritten calculations allegedly culled from the Debtor's trash by a private detective (who did not testify at the Hearing) hired by Syncom.  Exh. W.  Although admitted into evidence without objection, the Court accords little credibility to this document, noting, *inter alia*, that much of the content is illegible. Moreover, as Syncom admits that the date printed thereon by the fax machine, March 2, 2001, which pre-dated Syncom's employment of either the Debtor or Hogan, is incorrect, the Court has no way of knowing when the transmissions occurred. Sinopoli testified that it was while Hogan was still employed by Syncom and the Debtor testified that it was after Hogan had been terminated.  Syncom provided no evidence that the calculations were based on any information obtained from Syncom;  the Debtor testified that they utilized published industry-wide "production rates."

The Court finds that Syncom has not met its burden of proof that its claim is excepted from discharge under §523(a)(4) as a debt for a "defalcation while acting in a fiduciary capacity."

**E.      Count Three – §523(a)(6)**

In Count Three Syncom urges the Court to find its claim nondischargeable under §523(a)(6) as a debt for "willful and malicious injury by the debtor."

The Superior Court awarded Syncom enhanced compensatory damages based upon "the knowing and premeditated actions of the defendants at or about the time of their

separation from [Syncom], their continuing open defiance of the terms of their employment

contracts, as well as the character and context of their testimony at trial." Exh. A at 13.

Syncom argues that, under the doctrine of collateral estoppel, such findings are sufficient

to establish that its claim is excepted from discharge under §523(a)(6) as a debt for "willful

and malicious injury." The Court finds that the requisites for the application of collateral

estoppel have not been met. The Superior Court made no actual or necessary finding of

a "willful and malicious injury," as that phrase is applied in the context of §523(a)(6). In

addition, the underlying obligations arose from contract terms that, on appeal, were held

unenforceable. And, because the Superior Court Decision was reversed and remanded

by the Supreme Court, it is not a final judgment entitled to preclusive effect.

> The word "willful" in (a)(6) modifies the word "injury," indicating that
> nondischargeability takes a deliberate or intentional *injury*, not merely a
> deliberate or intentional *act* that leads to injury....
>
> [A] more encompassing interpretation could place within the excepted
> category a wide range of situations in which an act is intentional, but injury
> is unintended ... A knowing breach of contract could also qualify. A
> construction so broad would be incompatible with the well-known guide that
> exceptions to discharge should be confined to those plainly expressed.

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)

(emphasis in original; citations and internal quotation marks omitted).

> "Malicious", as defined by the Second Circuit, can involve actual or
> constructive malice, and "means wrongful and without just cause or excuse,
> even in the absence of personal hatred, spite, or ill-will." *Navistar Financial
> Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 88 (2d Cir.1996). The conduct
> giving rise to certain causes of action may be inherently malicious, such as
> malicious prosecution or assault. *Novartis Corp. v. Luppino* (*In re Luppino*),
> 221 B.R. 693, 700 (Bankr.S.D.N.Y.1998). In other cases, malice may be
> easily deduced where "the debtor's conduct giving rise to liability has no
> potential for economic gain or other benefit to the debtor, from which one
> could only conclude that the debtor's motivation must have been to inflict

21

harm upon the creditor." *Id.* However, in cases where a debtor seeks profit or some other benefit, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [ *Stelluti*]." *Id.*

*In re Khafaga*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009).

Syncom has not shown that Wood acted to inflict injury upon it. Rather, it is evident that Wood was motivated to act for his own economic gain. Moreover, the Debtor testified that, on advice of counsel, he believed that he was not bound by the terms of the Restrictive Covenant.  The documentary evidence introduced by Syncom supports the Debtor's testimony;  Exhibit O is a copy of a letter from the Debtor's attorney to the attorney for the AMC Empire 25 theater advising that, in his opinion, the Debtor was not bound by the terms of the Restrictive Covenant.[5]

For these reasons, Syncom's claim is not excepted from the Debtor's discharge under §523(a)(6) as a debt for "willful and malicious injury."

## V.   CONCLUSION

Syncom's heavy reliance on the doctrine of collateral estoppel is misplaced and it has not otherwise sustained its burden of proving, by a preponderance of the evidence, facts sufficient to satisfy the requirements for a finding of nondischargeability under §523(a)(2)(A), (4), or (6). Accordingly, Syncom's claim against the Debtor is subject to the Debtor's discharge.

---

[5]While neither the Superior Court nor the Supreme Court agreed with the conclusion of the Debtor's attorney that the relevant contract terms were unenforceable because Syncom had breached the agreement by suspending the Debtor and failing to negotiate the terms of his commissions; nevertheless, those terms  were held unenforceable as being unreasonably broad in scope.

22

A Judgment to this effect enters simultaneously herewith.

Dated: March 8, 2013                                      BY THE COURT


                                              Albert S. Dabrowski
                                      United States Bankruptcy Judge